## CLARK *v.* NORTH AMERICAN UNION.

**1. INSURANCE—FRATERNAL BENEFICIARY ASSOCIATIONS—EVIDENCE —TRIAL—DIRECTING VERDICT.**

> Where the testimony of defendant's examining physician showed, on cross-examination, at the trial of an action on a benefit certificate, although he had stated affirmatively in his direct examination that decedent answered a question in her application relating to pregnancy by "No," that he did not recollect definitely actually asking the question, the trial court did not err in submitting the issue of decedent's alleged fraud to the jury.

**2. SAME—NEW TRIAL—WEIGHT OF EVIDENCE.**

> *Held,* also, on motion for a new trial, that the verdict was not so opposed to the weight of the evidence as to require the court to grant a new trial.

Error to Muskegon; Barton, J. Submitted October 13, 1915. (Docket No. 80.) Decided December 22, 1915.

Assumpsit by Fred A. Clark against the North American Union on a benefit certificate. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cross, Vanderwerp, Foote & Ross (Clarence V. Donovan,* of counsel), for appellant.

*Turner & Turner,* for appellee.

BROOKE, C. J. For a statement of the facts involved in this case reference is made to *Clark* v. *North American Union,* 179 Mich. 131 (146 N. W. 336), where it will be found reported. We there held that the evidence of the examining physician as to the asking and answering of a controlling question was such as to present an issue for the determination of the jury. The case has now been tried a second time, and, the ques-

tions of fact having been determined by the jury in favor of the plaintiff, defendant has removed the case to this court for review.

The examining physician was again placed upon the stand by the defendant, and an elaborate examination and cross-examination ensued. The evidence upon the first trial will be found set forth, in part, in the earlier opinion. We quote briefly from the evidence upon the second trial.

Upon direct examination:

"*Q.* Do you have a very distinct recollection of that examination?

"*A.* No. * * *

"*Q.* I suppose you have a great many examinations to make, and blanks of this kind to fill out, and can't carry them all vividly in your mind.

"*A.* No.

"*Q.* But let me ask you this: Is it your practice to write down dates and answers and everything of that sort truthfully and in accordance with the fact?

"*A.* Yes, sir. * * *

"*Q.* Let me ask you, Doctor, in making out this certificate, did you intentionally make any misstatement of any kind?

"*A.* No, sir.

"*Q.* Or write down anything different from what you understood the fact to be?

"*A.* No, sir.

"*Q.* But at this date you can't recall, I suppose, the asking of specific questions or the return of specific answers?

"*A.* It isn't customary to keep records of those things, because that is a record, and the physician can't remember five years very well, distinctly. * * *

"*A.* (To the Court.) Now, your honor, this paper was—is a paper that I examined the deceased, and every question there was asked upon honor, except those of minor importance, and whatever the answer was on this blank is true, and that is all I can say. * * *

"*The Court:* Look at that blank.

"*Mr. Cross:* Here is the question I speak of.

"*A.* Your honor, if the answer is there, I certainly asked it.

"*Q.* Well, look at it.

"*A.* I did look at it.   I know what those questions are better than any man in this courtroom.

"*Q.* Certainly.

"*A.* I filled out hundreds of these blanks.

"*Q.* Are you able to say now that you propounded that question to Effie B. Clark?

"*A.* I certainly asked that question.

"*Q.* And she certainly answered it 'No.'

"*A.* The answer is there.

"*Q.* Well, look at the answer.

"*A.* Yes, sir.   That was my testimony at first."

On cross-examination:

"*Q.* Now, you don't have any recollection now whether the question was asked Mrs. Clark as to whether she was pregnant or not, have you?

"*A.* I don't remember.

"*Q.* And you don't know as you asked that question, do you?

"*A.* I don't remember now whether I asked it; no, sir.   *   *   *

"*Q.* Now, some of these questions are put down— they are answered by the party making the examination, without questions to the party you are examining; isn't that true?

"*A.* Certainly, there are some of them.

"*Q.* And you don't pretend to remember whether that was the fact in regard to the question of pregnancy, do you?

"*A.* I don't remember."

There is much more of this witness' examination and cross-examination in the record, but the foregoing will serve as a fair sample.   No other testimony was offered by the defendant tending to show that the question was asked by the physician and answered by the deceased.   Error is assigned by the defendant upon the refusal of the court to direct a verdict at the close of the testimony, and after verdict upon the refusal of

the court to set aside the same upon the ground that it was against the great and overwhelming weight of the evidence. These are the only questions raised upon the present record.

We are of opinion that the testimony given upon the last trial by the examining physician, taken as a whole, does not present a situation essentially different from that considered by us upon the former hearing. Under the authority of *Wilson* v. *Royal Neighbors of America,* 139 Mich. 423 (102 N. W. 957), we believe the case was properly submitted to the jury.

We do not think that it can be said that the verdict of the jury is so clearly against the weight of the evidence as to require us to overrule the action of the trial judge in denying a new trial upon that ground. Upon the one hand, every person is presumed to have read that which he has signed; and, upon the other hand, there stands the testimony of the physician, who, under cross-examination, gave evidence which, to say the least, makes it doubtful whether he actually asked the question relative to pregnancy, or whether the deceased fraudulently and untruthfully answered it.

The judgment will stand affirmed.

PERSON, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.